Platzer, Swergold, Levine,
  Goldberg, Katz & Jaslow, LLP
*Proposed Attorneys for Debtor*
475 Park Avenue South, 18th Floor
New York, New York 10016
(212) 593-3000
Clifford A. Katz

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:

GARDEN OF EDEN ENTERPRISES, INC.
d/b/a GARDEN OF EDEN,

                Debtor.
-------------------------------------------------------x
In re:

BROADWAY SPECIALTY FOOD, INC.
d/b/a GARDEN OF EDEN,

                Debtor.
-------------------------------------------------------x
In re:

COSKUN BROTHERS SPECIALTY
FOOD, INC. d/b/a GARDEN OF EDEN,

                Debtor.
-------------------------------------------------------x
In re:

GARDEN OF EDEN GOURMET INC.
d/b/a GARDEN OF EDEN,

                Debtor.
-------------------------------------------------------x

Chapter 11

Case No. 16-12488 (JLG)

Chapter 11

Case No. 16-12490 (JLG)

Chapter 11

Case No. 16-12491 (JLG)

Chapter 11

Case No. 16-12492 (JLG)

**AFFIDAVIT OF MUSTAFA COSKUN IN SUPPORT OF
<u>CHAPTER 11 PETITION AND FIRST-DAY MOTIONS</u>**

STATE OF NEW YORK    )
                                 )ss.:
COUNTY OF NEW YORK  )

      Mustafa Coskun, being duly sworn deposes and says:

1. I am the Chief Executive Officer of the debtor, Garden of Eden Enterprises, Inc. ("GEE"), and its affiliated debtors, Broadway Specialty Food, Inc. ("BSF"), Coskun Brothers Specialty Food, Inc. ("CBSF"), and Garden of Eden Gourmet Inc. ("GEG"), as debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors"). I have held this position with the Debtors during all relevant periods. In this capacity, I am familiar with the businesses, day-to-day operations, financial condition, books and records, and business affairs of the Debtors. I submit this Affidavit in support of the Debtors' chapter 11 petitions. I also submit this Affidavit in support of the first-day motions described below (collectively, the "First-Day Motions").

2. Except as otherwise indicated, all facts set forth in this Affidavit are offered to the best of my knowledge, information and belief and are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtors' management or professionals working with me or under my supervision, or my informed opinion based upon my experience and knowledge of the Debtors' industry, operations and financial condition. I am authorized to submit this Affidavit on behalf of the Debtors and, if I were called upon to testify, I could and would testify competently to the facts set forth herein.

3. To minimize any adverse effects on their businesses as a result of the Debtors' Chapter 11 filings, the Debtors have requested various types of relief in the First-Day Motions. The First-Day Motions seek relief, among other things, to: (a) ensure the continuation of the Debtors' business operations without interruption; (b) preserve customer and vendor relationships; (c) maintain employee morale and confidence; and (d) establish certain other administrative procedures to promote a smooth transition into Chapter 11 reorganization. Gaining and maintaining the support of the Debtors' employees, customers, vendors and other

key constituencies as well as maintaining the day-to-day operations of the Debtors' businesses with minimal disruption, will be critical to the Debtors' reorganization efforts and in maximizing the recovery prospects for all interested constituencies. Moreover, the relief requested in the First-Day Motions is in the best interests of the Debtors, their creditors, and the estate and is necessary to avoid immediate and irreparable harm.

## THE DEBTORS AND THEIR BUSINESS OPERATIONS

4. The Debtors are corporations organized and existing under the laws of the State of New York. Debtor GEE is the parent operating company of the Debtors, and maintains its place of business at 720 Anderson Avenue, Cliffside Park, New Jersey 07010. Debtors BSF, CBSF, and GEG operate upscale full-service specialty-food retail stores with three (3) locations in New York City: Debtor BSF operates at leased premises located at 2780 Broadway, New York 10025 ("Broadway"); Debtor CBSF operates at leased premises located at 162 West 23rd Street, New York, New York 10010 ("Chelsea"); and Debtor GEG operates at leased premises located 7 East 14th Street, New York, New York 10003 ("Union").

5. Together, the Debtors employ approximately 175 hourly and/or salaried employees. These employees perform a variety of critical functions including operation of the retail locations as well as many administrative functions such as accounting and management functions. The employees' skill, knowledge and understanding of the Debtors' operations and customer relations are essential for successful reorganization of the Debtors and maintenance of the value of the Debtors' businesses and assets.

6. The Debtors' businesses are profitable and valuable going concerns. Their stores have experienced a slowdown in sales over the last year. This slowdown and the historic lack of patronage during the summer months has cause the Debtors to fall behind in their payments to

secured creditors and landlords. In order to preserve their assets and restructure their operations and obligations, the Debtors have filed the instant bankruptcy cases.

## FIRST-DAY MOTIONS

7. An important and critical element of the success of these Chapter 11 Cases will be the entry of the orders granting the relief requested in each of the First-Day Motions. Generally the First-Day Motions are designed to facilitate: (a) the continuation of the Debtors' business operations without interruption, (b) preservation of customer and vendor relationships, (c) maintenance of employee morale and confidence, and, (d) establishment of certain other administrative procedures to promote a smooth transition into Chapter 11. The factual background in support of each of the First-Day Motions is provided below.

    **A.    Debtors' Motion for Orders approving Joint Administration of the Debtors' Chapter 11 cases pursuant to Fed. R. Bankr. P. 1015(b)**

8. The requested joint administration of the Chapter 11 Cases of the Debtors is necessary to effectively and efficiently administer their cases. The Debtors are interrelated affiliates which operate as integrated businesses with common ownership and control. As a result, many of the motions, hearings and orders that arise in these cases will affect all of the Debtors. Accordingly, the joint administration of these cases will reduce fees, avoid duplicative filings, and should be granted as being in the interest of all parties.

    **B.    Debtors' Motion for Interim and Final Orders: (1) Authorizing Use of Cash Collateral and Providing Adequate Protection pursuant to 11 U.S.C. §§ 361 and 363; and (2) Scheduling a Final Hearing**

9. In order for the Debtors to be able to finance and continue their business operations, the Debtors request authorization to use cash collateral. This measure is necessary to maintain the Debtors' businesses and maximize their value. Without access to cash collateral,

the Debtors will be unable to pay their employees, suppliers, vendors, servicers, landlords, and otherwise finance their day to day business operations.

        C.      **Debtors' Motion Authorizing the Debtors to Pay Certain Wages and Benefits**

10. The Debtors employ only full time employees (collectively, the "<u>Employees</u>" and each, an "<u>Employee</u>").

11. By motion, pursuant to §§ 105(a), 507(a)(4) and 507(a)(5) of the Bankruptcy Code, the Debtors seek authority to satisfy the pre-Petition Date payroll and/or compensation obligations to the Employees. These pre-petition obligations may include but are not limited to: amounts owed to the Employees for salaries, wages, commissions, compensation, vacation pay, holiday pay, severance pay, employee benefits, federal, state and local payroll related taxes, deductions and withholdings, and reimbursable business expenses which may include expenses incurred by Employees but not yet paid through the date of entry of the Order of Relief in this case (collectively, the "<u>Employee Pre-Petition Compensation Obligations</u>").

12. The aforementioned relief will enable the Debtors to avoid any disruption to their operations. The Debtors fear that if the Employees are not paid all pre-petition compensation, they will quit, strike, or no longer work for the Debtors, and leave the Debtors in a position where they will have to replace numerous employees and contractors instantaneously. The costs and expenses associated with locating and training new employees would likely exceed the costs of honoring pre-petition compensation at this time. The Debtors believe that the "doctrine of necessity" amply justifies the payment of pre-petition wages and/or compensation. The Debtors should not be left in a position where Employees do not show up for work because they are not paid. If the relief requested herein is not granted, I believe that the Employees would suffer hardship and, in many instances, financial difficulties, because these monies are needed to enable them to meet their personal obligations. In addition, without the requested relief, I believe that

the Debtors' stability would be undermined by the potential threat that otherwise loyal Employees at all levels would seek other employment and opportunities.

**D.    The Debtors' Motion Seeking Extension of Time to File Statements and Schedules**

13.    The Debtors also seek additional time to file the statements, schedules and disclosures required under the Bankruptcy Code. As set forth in the Debtors' Application for an Order Granting the Debtor Additional Time within which to File Their Schedules and Statement of Financial Affairs, the Debtors' management has been preoccupied with the transition into Chapter 11, the attendant financial problems to be addressed in bankruptcy, together with the oversight of the Debtors' day-to-day operations. The Debtors are currently working diligently to bring their books and records up-to-date in order to complete all disclosures required by the Bankruptcy Code.

14.    Approval of the First-Day Motions filed by the Debtors is a critical step for it to achieve a successful Chapter 11 Case as such approval would: (a) ensure the continuation of the Debtors' business operations without interruptions; (b) preserve customer and vendor relationships; (c) maintain employee morale and confidence; and, (d) establish certain other administrative procedures to promote a smooth transition into Chapter 11.

                                        */s/ Mustafa Coskun*
                                        MUSTAFA COSKUN

Sworn to before me this
 25th  day of August, 2016

 */s/ Andrew S. Muller*
NOTARY PUBLIC, STATE OF NEW YORK

ANDREW S. MULLER
Notary Public, State of New York
No. 02-MU024147
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires February 28, 2018