UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:                                                    Chapter 11

GARDEN OF EDEN ENTERPRISES, INC.                          Case No. 16-12488 (JLG)
d/b/a GARDEN OF EDEN, et al.,

                                                          (Jointly Administered)

                               Debtors.
--------------------------------------------------------x

**~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Debtors, Garden of Eden Enterprises, Inc. d/b/a Garden of Eden, Broadway Specialty Food, Inc. and Garden of Eden Gourmet Inc., debtors and debtors-in-possession (the "Debtors"), and the Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 cases, hereby propose the following ~~First~~Second t Amended Plan of Reorganization (the "Plan") pursuant to §1121(a) of Title 11 of the United States Code (the "Bankruptcy Code") to the Court, the creditors of the Debtors' estates and the equity interest owners in the Debtors.  The Debtors and the Committee are the "Plan Proponents" of the Plan within the meaning of Bankruptcy Code §1129.  Reference is made to the "First Amended Disclosure Statement in Support of Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code" filed contemporaneously with the Plan (the "Disclosure Statement"), for a discussion of the Debtors' history, businesses, property, results of operation, and for a summary analysis of the Plan and related matters.  All holders of claims against and equity interest in the Debtors are encouraged to read the Plan and the Disclosure Statement in their entirety.

**Formatted:** Left

## ARTICLE I

### DEFINITIONS AND CONSTRUCTION OF TERMS

Definitions:

For the purposes of this Plan, the following terms shall have the respective meanings herein set forth (such meanings to be equally applicable to the singular and plural forms of the terms defined). Capitalized terms used in this Plan shall at all times refer to the terms as defined in this Article I, except as otherwise indicated.

1.1    "14th Street Landlord Settlement" means the *Stipulation and Order for the Restructuring and Assumption of the Non-Residential Real Property Lease between Victoria Retail, L.L.C. and Garden of Eden Gourmet, Inc.* with Exhibit "A" (Fourth Amendment of Lease), Exhibit "B" (Stipulation of Settlement (Holdover Stipulation)) and Exhibit "C" entered on December 20, 2018 [Docket No. 314].

1.2    "Administrative Creditor" means the holder of a Claim for any cost or expense of administration in connection with these Chapter 11 cases, allowed under § 503(b) and § 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual, necessary costs and expenses of preserving the Debtors' estates and of operating and conducting the business of the Debtors, all allowances of compensation for legal or other professional services or reimbursement of costs and expenses under § 330 and § 503 of the Bankruptcy Code or otherwise allowed by the Court.

1.3    "Allowed Administrative Claim" means all or that portion of an Allowed Claim for any cost or expense of administration in connection with these Chapter 11 cases, allowed under § 503(b) and § 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual, necessary costs and expenses of preserving the Debtors' estates and of operating and conducting the businesses of the Debtors, all allowances of compensation for legal or other professional

**Formatted:** Left

services or reimbursement of costs and expenses under §330 and §503 of the Bankruptcy Code or otherwise allowed by the Court.

1.4    "Allowed Claim" means any Claim or a portion of a Claim (a) which is scheduled pursuant to 11 U.S.C. §521(a)(1), other than a Claim scheduled by the Debtors as disputed, contingent or unliquidated; or (b) proof of which has been filed pursuant to 11 U.S.C. § 501(a), on or before the Bar Date and with respect to which no objection to the allowance thereof has been interposed within the period of limitation fixed by the Code or by the Court; or (c) to the extent as to which any objection has been resolved by a Final Order in favor of the holder of such Claim.

1.5    "Allowed Priority Claim" means all or that portion of an Allowed Claim entitled to priority under 11 U.S.C. § 507(a)(1) through (10).

1.6    "Allowed Unsecured Claim" means any Allowed Claim as it existed on the Filing Date, which is not (a) an Allowed Administrative Claim; (b) an Allowed Priority Claim; or (c) Allowed Secured Claim.

1.7    "Assumed Real Property Leases" means the Executory Real Property Leases set forth in Article XII to this Plan, which are being assumed by the Debtors pursuant to this Plan.

1.8    "Avoidance Actions" means any cause of action assertable under §§510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code sections.

1.9    "Ballot" means the form transmitted to creditors with the Plan and Disclosure Statement on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and § 1126 of the Bankruptcy Code.

Formatted: Left

1.10    "Bankruptcy Rule(s)" means the Federal Rules of Bankruptcy Procedure as applicable to cases under Title 11 of the United States Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications from time to time made thereto.

1.11    "Bar Date" means the date fixed by order of the Bankruptcy Court by which proofs of claim of various categories must be filed against the Debtors which date had been fixed by the Bankruptcy Court as January 31, 2017.

1.12    "Broadway" means debtor, Broadway Specialty Food, Inc.

1.13    "Business Day" means any day other than a Saturday or Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.14    "Cash" means legal tender of the United States of America or cash equivalents.

1.15    "Chapter 11" means Chapter 11 of the Code.

1.16    "Chapter 11 Cases" means these proceedings commenced under Chapter 11 of the Bankruptcy Code by the Debtors on the Filing Date.

1.17    "Claim" means a Claim against the Debtor as defined in 11 U.S.C. §101(5).

1.18    "Claimant" means the holder of a Claim.

1.19    "Code" or "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §101 et seq. as amended and which amendments are applicable thereto.

1.20    "Confirmation Date" means the date of entry by the Court of an order confirming the Plan in accordance with Chapter 11 of the Code.

1.21    "Confirmation Hearing" means the hearing held by the Court, following notice, to determine whether or not to enter a Confirmation Order.

1.22    "Confirmation Order" means the order entered by the Court confirming the Plan.

1.23    "Contested Claim" means a Claim against the Debtors that is:

Formatted: Left

(a)     listed in the Debtors' schedules of liabilities as disputed, contingent or unliquidated;

(b)     listed in the Debtors' schedules of liabilities as undisputed, not contingent and liquidated and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim exceeds the scheduled amount and which amount is not otherwise agreed to by the Debtors or the classification of such proof of claim deviates from the scheduled classification and which classification is not otherwise agreed to by the Debtors and to which an objection has been made within the objection period set forth in Article IX hereof;

(c)     that is not listed in the Debtors' schedules of liabilities, but as to which a proof of claim has been filed with the Bankruptcy Court and to which an objection has been made within the objection period set forth in Article IX hereof; or

(d)     as to which an objection has been filed.

1.24    "Court" or "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York; or such other court having subject matter jurisdiction over these Chapter 11 Cases.

1.25    "Creditor" means:

(a)     an entity that has a Claim against the Debtors that arose at the time of or before the Filing Date; or

**Formatted:** Left

(b)    an entity that has a Claim against the Debtors' estates of the kind specified in §§ 348(d), 502(f), 502(g), 502(h), 502(i) or 502(j) of the Bankruptcy Code.

1.26    "Debtors" shall mean Garden of Eden Enterprises, Inc. d/b/a Garden of Eden, Broadway Specialty Food, Inc. and Garden of Eden Gourmet Inc.

1.27    "Disbursing Agent" shall mean the Debtors and/or the Reorganized Debtors.

1.28    "Disclosure Statement" means the Debtors' Joint Disclosure Statement as approved by the Court as containing adequate information under the Code, as may be amended.

1.29    "Distribution Date" shall mean any date on which a distribution under the Plan is to be made to the holders of Allowed Claims.

1.30    "Effective Date" means the date upon which the Confirmation Order becomes a Final Order, the $25,000.00 contribution is made and on which date the Plan becomes operative.

1.31    "Enterprises" means debtor, Garden of Eden Enterprises, Inc. d/b/a Garden of Eden.

1.32    "Equity Interest" means any interest based upon ownership of stock in the Debtors.

1.33    "Executory Contract" means any of the contracts and unexpired leases to which the Debtor is a party or was a party as of the Filing Date and which are executory within the meaning of § 365 of the Bankruptcy Code other than unexpired leases of non-residential real property, which are defined separately herein as "Executory Real Property Leases".

1.34    "Executory Leases" means any unexpired leases of non-residential real property leases to which the Debtor is a party or was a party as of the Filing Date and which are executory within the meaning of §365 of the Bankruptcy Code.

1.35    "Filing Date" or "Petition Date" means August 29, 2016, the date the Debtors filed their petitions for reorganization under Chapter 11 of the Code.

**Formatted:** Left

1.36    "Final Order" means an order or a judgment as to which (a) the time to appeal or to seek review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari proceeding is pending or (b) an order or judgment which has been appealed but not stayed pending appeal, or an order or judgment which has been stayed pending appeal but has been affirmed on appeal and as to which affirmation, both the time for further appeal and the stay has expired; provided, however, that no order or judgment shall be deemed not to be a Final Order solely because such order or judgment is subject to the filing of a motion for reconsideration.

1.37    "Gourmet" means debtor, Garden of Eden Gourmet Inc.

1.38    "Plan" means this Joint Plan of Reorganization in its present form or as may hereafter be amended, modified or supplemented from time to time.

1.39    "Platzer" means Platzer, Swergold, Levine, Goldberg, Katz & Jaslow, LLP.

1.40    "Pro Rata Share" means the proportion that an Allowed Claim in a particular class bears to the aggregate of all Claims in that class, including Contested Claims, but not including Claims disallowed pursuant to a Final Order, as calculated by the Debtors on any date fixed for distribution or consideration under the Plan.

1.41    "Reorganized Debtors" mean Garden of Eden Enterprises, Inc. d/b/a Garden of Eden, Broadway Specialty Food, Inc. and Garden of Eden Gourmet Inc. on and after the Confirmation Date.

1.42    "Unclaimed Distribution" shall mean any distribution contemplated under the Plan unclaimed after the 90th day following the Distribution Date.  Unclaimed Distributions shall include checks and the funds represented thereby: (a) which have been returned as undeliverable without a proper forwarding address; (b) which have not been paid; and (c) which were not mailed or delivered because of the inability to obtain a proper address.

**Formatted:** Left

1.43    "Victoria Retail" means Victoria Retail LLC.

## ARTICLE II

## ADMINISTRATIVE CONSOLIDATION

2.1    These Chapter 11 Cases shall be treated as if administratively consolidated ONLY for the purposes of:

    a.    Confirming, consummating and implementing the Plan;

    b.    Computing Claims;

    c.    Determining voting rights with respect to the Plan; and,

    d.    Making payments under the Plan.

2.2    All Allowed Claims against each of the Debtors shall be treated as Allowed Claims against the administratively consolidated estates of the Debtors.  Any Claim against a debtor in these Chapter 11 Cases that is also asserted against another debtor on the grounds that such other debtor is a co-debtor, surety or guarantor, or is otherwise liable with respect to the Claim shall be treated as a single Claim against the Debtors.  No inter-debtor Claim of a debtor against another debtor, shall be allowed for purposes of the Plan and no distribution shall be made on account of such Claim.  On the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based on guarantees of collection, payment or performance made by the Debtors as to obligations of another debtor shall be discharged, released and of no further force and effect.  The treatment provided for herein shall not affect the separate existence of each of the Debtors for any purpose other than as provided in this Plan.

**Formatted:** Left

## ARTICLE III

### CLASSIFICATIONS AND IMPAIRMENT
### OF CLAIMS AND EQUITY INTERESTS

3.1    Claims shall be bound by the provisions of this Plan and are hereby classified as

follows:

| | |
|---|---|
| Class 1 | Allowed Secured Claim of Noah Bank |
| Class 2 | Allowed Secured Claim of American Express |
| Class 3 | Allowed Administrative Claims |
| Class 4 | Allowed Priority Claims |
| Class 5 | Allowed Unsecured Claims |
| Class 6 | Insider Interests |

3.2    The inclusion of a Creditor by name in any class is for purposes of general

description only, and includes all persons claiming as assignees, heirs, devises, transferees or

successors in interest in whole or in part, of any kind, of the Creditor named.

3.3    Classes 1, 2, 3, 5 and 6 are impaired Classes under the Plan.  Class 4 is unimpaired

under the Plan.

**Formatted:** Left

**ARTICLE IV**

**PROVISIONS FOR TREATMENT OF**
**CLASS 1 ALLOWED SECURED CLAIM OF NOAH BANK**

4.1    The Class 1 Claim shall consist of the Allowed Secured Claim of Noah Bank in the

sum of $2,716,877.00 plus interest as provided in the Noah Bank loan documents, secured by all

assets of the Debtors and shall receive the sum of $16,200.00 per month for the first twenty-four

(24) months after the Effective Date.  Thereafter, the Class 1 Claim shall be paid $19,200.00 per

month for the next twelve (12) successive months.  Thereafter, the Class 1 Claim shall be paid

$21,200.00 per month until the Class 1 Claim has been paid in full.  The holder of the Class 1

Allowed Secured Claim of Noah Bank is impaired under this Plan.

**ARTICLE V**

**PROVISIONS FOR TREATMENT OF**
**CLASS 2 ALLOWED SECURED CLAIM OF AMERICAN EXPRESS NATIONAL BANK**

5.1    The Class 2 Claim shall consist of the Allowed Secured Claim of American Express

in the amount of $1,096,613.45 as of April 2, 2019, plus interest at a rate of the prime rate (less

payments made after April 2, 2019 and prior to the Confirmation Date), secured by all assets of

the Debtors, subordinate to the Class 1 Claim.  The Class 2 Claim shall be paid as follows.  As

provided in the Debtors' Business Loan and Security Agreement (the "Amex Loan Agreement")

with American Express National Bank successor by merger to American Express Bank FSB

("AENB"), and the Debtors' Card Acceptance Agreement with American Express Travel Related

Services Company, Inc. ("AETRS") (AENB and AETRS are collectively, "Amex"), the Debtors

shall use their Card Acceptance Agreement with AETRS for the processing of all of their

"American Express" card transactions.  American Express is authorized to withhold and apply to

{S2612481; 1}                                                    10

**Formatted:** Left

the Class 2 Claim amounts from the Debtors' "American Express" card proceeds as provided in the Amex Loan Agreement at the initial repayment rate of 3% for the first 36 months after the Effective Date, 5% for the fourth year, and 9.5% for the fifth and sixth years (each of the aforementioned percentages are hereinafter defined as the "Estimated Repayment Percentages"). In the event that the amount repaid under the Amex Loan Agreement using the Estimated Repayment Percentages, at the end of the first 12 months, second 12 months or third 12 months is less or more than $74,400, or is less than $134,400 for the fourth 12 months, or is less than $254,400 for the fifth 12 months (the "Minimum Amount(s)"), the Estimated Repayment Percentages shall be adjusted upward or downward based on the prior 12 months of charge volume so that the estimated amount to be repaid during the following 12 months will cover the difference owed or reduce and credit the overpayment between the amount repaid and the Minimum Amount for the prior 12 month period and the Minimum Amount for the following 12 month period[1]. The balance due for the Class 2 Claim under the Amex Loan Agreement shall be payable in full in cash by the Debtors at the end of the sixth year. The amount to be repaid under the Amex Loan Agreement shall bear interest as of the Effective Date at the prime rate until paid in full. To the extent that section 365 of the Bankruptcy Code is applicable to the Card Acceptance Agreement, the Debtors shall be deemed to have assumed the Card Acceptance Agreement as of the Effective Date. The Debtors shall comply with all terms of the Amex Loan Agreement (as modified by the terms of this Article V) and the Card Acceptance Agreement.

---

[1] For purpose of example only, if the Estimated Repayment Percentage yields a 12 month payment to American Express in the first 12 month period in the amount of $94,400, then the Estimated Repayment Percentage shall be reduced such that the anticipated yield for the next 12 month period is the amount of $54,400.

**Formatted:** Left

## ARTICLE VI

### PROVISIONS FOR TREATMENT OF
### CLASS 3 ALLOWED ADMINISTRATIVE CLAIMS

6.1     The Class 3 Allowed Administrative Claims shall be paid in accordance with their

terms or as otherwise agreed upon between the Administrative Creditor and the Debtors.

Allowed Administrative Claims of the professionals retained by the Committee and the Debtors

in the approximate collective sum of $~~550~~750,000.00 shall receive the sum of $~~13,200.00~~8,000

per month for the first forty-eight (48) months after the Effective Date and shall continue to be

paid until their Claims have been paid in full as approved by Order of the Bankruptcy Court.

Distributions to retained professionals shall be in proportion to their respective Allowed Claim.

Cure costs for the Debtors' landlords shall be paid in accordance with the agreements reached

with each landlord permitting assumption of their non-residential real property leases.  Class 3

Claims are impaired under the Plan. The Administrative Claim of NYS Department of Taxation

("NYS") arising from post-petition taxes due and payable by the Debtors shall be paid as follows

in accordance with an agreement and consent of NYS: (i) the sum of $120,540,28 representing

the Debtors entire principal amount (the "Principal Amount") of post-petition taxes due shall be

paid on the Effective Date.  Accrued interest and penalties with respect to the Debtors NYS tax

obligation shall be paid quarterly by the Debtors' over a period of 5 years with statutory interest

continuing to accrue.  As part of this payment to NYS, it is acknowledged by NYS that

Broadway and Gourmet are entitled to refunds for prior tax periods paid in the amount of

$10,973.54 and $33,777.00 respectively. NYS and the Debtors have agreed to permit the setoff

of the aforesaid amounts from the Principal Amount which shall be authorized in the

Confirmation Order. In the event of an uncured default by the Debtors' in the payment of the

**Formatted:** Left

{S2612481; 1}                                             12

obligations due NYS as provided in this Plan, the entire amount plus accrued but unpaid interest shall be immediately due and payable.

**ARTICLE VII**

**PROVISIONS FOR TREATMENT OF**
**CLASS 4 ALLOWED PRIORITY CLAIMS**

7.1    Class 4 Allowed Priority Claims shall consist of the Internal Revenue Service and New York State Department of Taxation in the approximate collective sum of $220,000.00.  Class 4 Allowed Priority Claims shall be paid in full in equal quarterly installments over six (6) years from the Effective Date of the Plan plus statutory interest.  Class 4 Allowed Priority Claims are not impaired under the Plan.

**ARTICLE VIII**

**PROVISIONS FOR TREATMENT OF**
**CLASS 5 ALLOWED UNSECURED CLAIMS**

8.1    Class 5 Allowed Unsecured Claims shall consist of the Allowed Unsecured Claims of the Debtors in the approximate collective sum of $2,800,000.00.  Class 5 Allowed Unsecured Claims shall receive a distribution equal to ten percent (10%) of their Allowed Claims in semi-annual payments over forth-eight (48) months commencing from the Effective Date of the Plan.  Class 5 Claims are impaired under the Plan.

**ARTICLE IX**

**PROVISIONS FOR TREATMENT OF**
**CLASS 6 EQUITY INTERESTS**

9.1    Class 6 Equity Interests shall consist of the Equity Interest Holders of the Debtors. Class 6 Equity Interests shall be cancelled and new stock of the Reorganized Debtors shall be

{S2612481; 1}                                         13

issued in favor of Celal Coskun who shall make a capital contributions to the Debtors in the amount of $25,000.00.  Class 6 Equity Interests are designated as being impaired under the Plan, and are deemed to have rejected the Plan.

## ARTICLE X

## MEANS FOR EXECUTION

10.1    The Reorganized Debtors shall act as Disbursing Agent and shall distribute all proceeds in accordance with this Plan.

10.2    The Debtors shall satisfy their payment obligations under this Plan through its cash availability and the capital contribution of Celal Coskun in the sum of $25,000.00.

10.3    On the Confirmation Date, the Reorganized Debtors shall provide counsel to the Committee with a schedule that sets forth (i) the name and address of each holder of an Allowed Unsecured Claim; and (ii) the *pro rata* amount of the Initial Distribution to be received by each holder of an Allowed Unsecured Claim.

## ARTICLE XI

## POST CONFIRMATION

11.1    Fees and Expenses of Professionals

The Debtors shall make an additional distribution to Allowed Class 1, Class 2 and Class 3 Fee Claims with each class receiving one/third of the additional distribution and allowed claims within such classes receiving the additional distribution pro rata with respect to their class. The Additional Distribution shall be payable at the end of each successive year during which money may be owed to Class 1, Class 2 or Class 3 Fee Claims commencing on December 31, 2020. The Additional Distribution is defined as the amount of profit arising from the Debtors' combined operations, after payment of operating expenses of the types set forth in the projections (the

{S2612481; 1}                                          14

**Formatted:** Left

"Projections") attached as Exhibit C to the Disclosure Statement, in excess of $100,000, (the "Base Capital Amount") for the first year subsequent to the Confirmation Date. The Base Capital Amount shall increase by 3% for each subsequent year.  Until Class 1, Class 2 and Class 3 retained professionals have been paid in full, no insider of the Debtor shall be en

titled to any compensation in excess of the amount included in the operating expenses set forth in the Projections; provided, however, that this provision alone shall not restrict insider compensation from increasing by up to 10% per year from the Projections.[2]

Unless otherwise provided for in the Confirmation Order or other order of the Court, fees and expenses incurred for services rendered to the Debtors or the Committee by one or more of their respective professionals retained in these Chapter 11 Cases, (in furtherance of carrying out or enforcing the terms and conditions of this Plan) including, but not limited to the attorneys to the Debtors and the attorneys for the Committee, following the Confirmation Date, shall be paid as provided herein.  Post Effective Date, fees and expenses of such professionals shall be paid by the Debtors, within thirty (30) days from the date of the invoice (unless the Debtors object in writing to the invoicing party).  If there is a dispute as to any invoice which is not resolved, such dispute shall be submitted to the Bankruptcy Court for determination.  The uncontested portion of each invoice shall be paid by the 30th day, as set forth above.  The Court shall retain jurisdiction to resolve any disputes with respect to post Effective Date fees and expenses.

---

[2] By way of example if the Debtors' combined profit for the first year subsequent to the Confirmation Date is the sum of $150,000, then the sum of $50,000 shall be the Additional Distribution. The Base Capital Amount shall increase by 3% in the second year such that the Base Capital Amount shall be the sum of $103,000.

**Formatted:** Left

11.2    U.S. Trustee Quarterly Fees

~~All~~On June 8, 2020, in accordance with instruction by the Bankruptcy Court at a hearing on June 4, 2020, the Debtors paid to the United States Trustee fees due and owing at that time in the total amount of $191, 761.23. All additional fees payable pursuant to §1930 of Title 28 of the United States Code and any interest thereon due and payable through the Effective Date, shall be paid by the Debtors on or before the Effective Date or as agreed to among the Debtors and the Office of the United States Trustee, and amounts due thereafter shall be paid by the Reorganized Debtor in the ordinary course until the entry of a final decree closing the reorganized Debtors' Chapter 11 Cases or until the conversion or dismissal of the cases.  Any deadline for filing claims in these Chapter 11 Cases shall not apply to fees payable by the Debtors pursuant to §1930 of Title 28 of the United States Code.  The Reorganized Debtors shall be responsible for the reporting requirements of the Office of the United States Trustee and shall file quarterly operating reports.

**ARTICLE XII**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

12.1    The Debtor reflected below assumes the Real Property Lease as follows:

| | |
|---|---|
| Debtor: | Broadway Specialty Food, Inc. |
| Landlord: | 107 West Apt. Corp. |
| Premises: | 2780 Broadway, New York, NY 10025 |
| Lease Expiration Date: | March 31, 2024 |

~~12.2    Pursuant to the modification agreements for the Assumed Real Property Leases entered into by and between the Debtors and their respective Landlords, for which approval is~~

{S2612481; 1}                                    16

Formatted: Left

~~being sought, the agreed amounts set forth in the respective modification agreements, if any, due and owing by the Debtors to each of their respective Landlords upon assumption of the Assumed Real Property Leases, shall be deemed to be the entire cure obligations of the Debtor due to the landlords under Section 365(b) of the Bankruptcy Code. Upon entry of the Confirmation Order, the Landlords to the Assumed Real Property Leases hereby forever release and waive any and all un-filed claims and/or filed proof(s) of claim they ever had, have or may have against the Debtors with respect to said cure obligations (regardless of whether or not the un-filed or filed proof(s) of claim are inconsistent, or greater than the agreed amount of the respective cure obligations) provided that said cure obligations, if any, are paid by the Debtors in the manner provided in the respective modification agreements, if any.~~

12.2    Broadway and 107 West Apt. Corp. entered into a Settlement Agreement dated June 1, 2020 (the "Broadway Settlement," which agreement includes a Second Amendment of Broadway's lease with 107 West Apt. Corp. (the "Broadway Lease"). Broadway filed a motion (the "Broadway Motion", Docket #443) on June 15, 2020 seeking authority pursuant to Rule 9019 of the Rules of Bankruptcy Procedure to approve the Broadway Settlement, including settlement, compromise and amendment and assumption of the Broadway Lease. The Broadway Motion is scheduled to be heard on July 14, 2020. It is anticipated that the Bankruptcy Court will enter an Order approving the Broadway Settlement and authorizing Broadway to amend, modify and assume its lease for the premises located at 2780 Broadway, New York, New York. The Broadway Settlement is incorporated into this Plan as if fully set forth herein. The modification, amendment and assumption of the Broadway Lease will enable Broadway to continue at operate at this location, reduce Broadway's rental obligations and cure the arrears with respect to the Broadway

**Formatted:** Left

Lease over the balance of the remaining term of the Broadway  Nothing in this Plan shall amend, contradict, modify or impair the terms and obligations of the Broadway Settlement.

12.3    The 14th Street Landlord Settlement by and between Gourmet and Victoria Retail was approved by this Court on December 20, 2018 [Docket No. 314].  Pursuant to the 14th Street Landlord Settlement Gourmet assumed the 14th Street lease with Victoria Retail and the 14th Street Landlord Settlement reduced the monthly rental amounts to Victoria Retail and provided for the cure of pre and post-petition defaults over the remaining term of the 14 Street lease, among other terms as provided for therein. The 14th Street Landlord Settlement is incorporated into this Plan as if fully set forth herein. Nothing in this Plan shall amend, contradict, modify or impair the terms and obligations of the 14th Street Landlord Settlement. Gourmet has also filed a motion approving a further amendment of Gourmet's lease with the 14th Street Landlord to enable the Debtor to defer and payout arrears accumulated during the Covid-19 pandemic in the months of March, April and May 2020. This motion is scheduled to be heard by the Bankruptcy Court on July 14, 2020.

12.4    All other Executory Contracts, not previously assumed or rejected by the Debtors during these Chapter 11 cases, are hereby rejected.

12.5    Except as otherwise provided herein, unless an objection to assumption of an Executory Contract or a statement as to the amount of a party's Claim relating to an Executory Contract is filed with the Bankruptcy Court on or before the date fixed by the Bankruptcy Court for the filing of objections to confirmation of the Plan, all requirements of §365 of the Bankruptcy Code with respect to the assumption by the Debtors of such Executory Contracts shall be deemed to have been satisfied in full upon the payment by the Debtor of any Claim or Executory Contract cure amount relating to such Executory Contract reflected in the Debtors' books and records as of such date.  If a party objects to assumption of an Executory Contract or files with the Bankruptcy

{S2612481; 1}                                    18

**Formatted:** Left

Court a statement as to the amount of such party's Claim relating to such Executory contract and the amount of such Claim is disputed by the Debtors, all requirements of § 365 of the Bankruptcy code with respect to the assumption by the Debtors of such Executory Contract shall be deemed to have been satisfied in full upon payment by the Debtors of the Claim relating to the Executory Contract which becomes an Allowed Claim promptly after the entry of a Final Order approving the assumption of the Executory Contract and/or determining the amount of the Allowed Claim relating to such Executory Contract.

12.6    If the rejection of an Executory Contract by the Debtors result in damages to the other party or parties to such Executory Contract, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not become an Allowed Claim unless a proof of claim is filed with the Bankruptcy Court and served upon Debtor's counsel no later than thirty (30) days after the earlier of (1) entry of the Confirmation Order or (2) the entry of an order of the Bankruptcy Court authorizing the rejection of such Executory Contract.  All Claims arising out of the rejection of Executory Contracts shall be treated as Class 5 Claims.

12.7    For purposes of the initial distribution, the Debtors will estimate an amount to reserve for those claims arising out of the rejection of the Executory Contracts.  All Executory Contracts not previously assumed or rejected by the Debtors during the Chapter 11 Cases are hereby rejected.


## ARTICLE XIII

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

{S2612481; 1}                                      19

Formatted: Left

13.1    Each impaired class of Creditors with Claims against the Debtors' estates shall be entitled to vote separately to accept or reject the Plan.

13.2    A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3rds) in the aggregate dollar amount, and more than one-half (1/2) in number of holders of the Allowed Claims of such class that have accepted or rejected the Plan.

13.3    In the event that any impaired class of creditors with Allowed Claims against the Debtors' estates shall fail to accept the Plan in accordance with § 1129(a)(8) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code.

**ARTICLE XIV**

**PROCEDURES FOR RESOLVING CONTESTED CLAIMS**

14.1    Prior to or after the Confirmation Date, objections to Claims may be made by the Debtors or the Reorganized Debtors.  Such objections shall be served upon each holder of each of the Claims to which objections are made and filed with the Bankruptcy Court as soon as practicable, but in no event shall such objections be filed later than one hundred twenty (120) days subsequent to the Confirmation Date unless further extended by Court order on notice to those Creditors whose claims are subject to an objection ("Objection Period").  Any Claims that are not objected to within the Objection Period shall be deemed Allowed Claims.

{S2612481; 1}                                    20

**Formatted:** Left

14.2    Objections to Claims that are pending on the Confirmation Date or filed within the Objection Period may be prosecuted after the Confirmation Date.  The Debtors and or Reorganized Debtors shall have the discretion to litigate to judgment, settle or withdraw objections to Contested Claims.

14.3    Except for the undisputed portion with respect to any Contested Claim which shall be paid as part of the distributions hereunder, no payments or distributions shall be made with respect to the disputed portion of such Contested Claim unless and until all objections to such disputed portion of such Contested Claim have been determined by a Final Order or the date by which to file objections to Claims has expired and no objection has been filed to a particular Claim. Payments and distributions on the undisputed portion of a Contested Claim shall be made in accordance with the provisions of the Plan with respect to the class of Creditors to which the holder of such an Allowed Claim belongs. Upon resolution of the disputed portion of a Contested Claim, any payments that would have been made prior to the date on which the disputed portion of a Contested Claim became an Allowed Claim shall be made at the next interim or final distribution date for Such Class after the date that the order allowing such amount is a Final Order, if applicable.

14.4    As to any unliquidated Claims existing on the Confirmation Date, the Bankruptcy Court may estimate pursuant to § 502(c) of the Code the likely amount of such Claim.

14.5    The disputed portion of all Contested Claims shall be deemed Allowed Claims for purposes of the Debtors to reserve the distribution amount in respect of such disputed portion for distributions under this Plan.

**Formatted:** Left

## ARTICLE XV

### UNCLAIMED DISTRIBUTIONS

15.1    If any payment distributed under the Plan is not deposited or is unclaimed by a Class 5 Claimant (of an Allowed Unsecured Claim) within 90 days after mailing of such payment, and if the Debtors or Reorganized Debtors are unable to locate such holder after reasonable inquiries, then and in that event such holder's Claim shall thereupon be deemed expunged as of the due date of such Unclaimed Distribution, and such holder shall not be entitled to any future payments under the Plan and such Unclaimed Distribution shall be forfeited by such holder, whereupon all right, title and interest in and to such Unclaimed Distribution shall revert to the Debtors or the Reorganized Debtors, as the case may be.

## ARTICLE XVI

### POST-EFFECTIVE DATE OVERSIGHT ADMINISTRATOR

16.1    The Committee shall be disbanded upon the Effective Date of the Plan.

16.2    **Oversight Administrator Appointment**

The Committee shall be disbanded upon the Effective Date of the Plan.

On the Effective Date, Michael Wyse shall be designated the post-Effective Date Oversight Administrator of the Reorganized Debtors to review the Reorganized Debtors' books and records and ensure all distributions required by the Plan are made in accordance with the Plan.  The Oversight Administrator shall report to the Reorganized Debtors, the Secured Creditors and Sullivan & Worcester LLP as counsel for the former Committee of Unsecured Creditors.  The Oversight Administrator may be replaced upon consent of the Reorganized Debtors, the Secured Creditors and Sullivan & Worcester LLP, as counsel for the former Committee of Unsecured

**Formatted:** Left

{S2612481; 1}                                                22

Creditors  The role and responsibilities of the Oversight Administrator shall terminate at the earlier of; (i) the agreement to terminate the Oversight Administrator by the Reorganized Debtors, the Secured Creditors and Sullivan & Worcester LLP as counsel for the former Committee of Unsecured Creditors, or (ii) after all distributions are made to Secured Creditors and the holders of Allowed Unsecured Claims under the Plan and the Reorganized Debtors so advise the Oversight Administrator in writing (which notice must be sent via email and overnight mail to the Oversight Administrator).

16.3    **Payment of Fees and Expenses of Oversight Administrator**.  The reasonable and documented fees and expenses of the Oversight Administrator shall be paid by the Reorganized Debtors and capped in the amount of $7,500.00 per year.

### ARTICLE XVII

### AVOIDANCE ACTIONS

17.1    The pursuit of Avoidance Actions are hereby waived by the Debtors and their estates.  The Debtors believe that the total amount of these transfers that would be recoverable as Avoidance Actions, after considering applicable defenses such as payment in the ordinary course, contemporaneous exchange and new value as set forth in section 547 of the Bankruptcy Code, would be reduced considerably.  In addition, it is the Debtors' business judgment that pursuit of Avoidance Actions would not be in their best interest, as it would have a detrimental impact on the relationships between the Debtors, their key vendors, and suppliers and could harm the ultimate success of the Debtors go-forward operations.

17.2    The Committee however has requested an extension of the statute of limitations for actions to recover transfers in the one-year period prior to the Petition Date made by the Debtors

{S2612481; 1}    23

to or for the benefit of Mustafa Coskun and/or Celeal Coskun which may constitute avoidable transfers (the "Avoidable Transfers").  On August 14, 2018, Mustafa Coskun and Celal Coskun have each entered into a First Amended Tolling and Forbearance Agreement with the Committee (the "Tolling Agreement") whereby the parties agreed to extend the Section 546 deadline, as well as any and all other applicable statutesstatute of limitations, statutes ofor repose, or any other time-related defense that might exist with respect to the Avoidable Transfers, through the earlier of (a) June 30, 2019, orDecember 31, 2018 and (b) the Effective Date of the Plan (the "Forbearance Period"). Since that time, the Tolling Agreement has been subsequently amended and extended four times, most recently on May 19, 2020. As of that date, the Forbearance Period was extended to the earlier of (a) December 31, 2020 and (b) the Effective Date of the Plan.

### ARTICLE XVIII

### RELEASES

18.1    **Except as otherwise provided in the Plan, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever against the Debtors or any of their assets or properties and all Claimants shall be enjoined and precluded from asserting any Claims against the Debtors or the Reorganized Debtors or their assets and the Debtors and the Reorganized Debtors shall be released from any and all Claims, including, without limitation, demands and liabilities that arose before the Confirmation Date**.

**Formatted:** Left

18.2    To the extent permitted by Section 1125(e) of the Bankruptcy Code, the Debtors' attorneys, accountants and/or financial advisors and the Committee's representatives and attorneys shall have no liability for actions or omissions regarding the Plan or the Debtors' operation and administration during the Chapter 11 cases that arise out of such entities' relationship with the Debtors or the Committee on or prior to the Effective Date, other than claims: (i) specifically preserved pursuant to this Plan; (ii) that arise from obligations created under or in connection with this Plan; (iii) constituting rights pursuant to the Plan; provided, however, that the foregoing shall not apply to such entities' fraud, gross negligence, breach of fiduciary duty, malpractice or willful misconduct.

18.3    **Nothing contained in Article XVIII of this Plan shall limit the liability of the Debtors and Committee's professionals to the Debtors and Committee pursuant to N.Y. Comp. Codes R. & Regs. Tit. 22 section 1220.8 Rule 1.8, Rule 1.8 (h) (1) and any other statutes rules or regulations dealing with professional conduct to which such professionals are subject.**

18.4    **Stay of Guaranty.**  Upon the entry of the Confirmation Order, all existing guaranty obligations of Mustafa Coskun with respect to the obligations of the Debtors shall be stayed, provided that; the Debtors are not in default of the Plan and Mustafa Coskun shall continue to be employed by the Debtors. Notwithstanding the foregoing, nothing herein shall (i) stay the guaranty obligations of Mustafa Coskun and Celal Coskun under that certain Guaranty, dated July 29, 2014, by and between Mustafa Coskun and Celal Coskun, as guarantors, and Hamdi Ulukaya, as lender, thereunder unconditionally guarantying the obligations of Debtor Garden of Eden Enterprises, Inc. to Hamdi Ulukaya under that certain Promissory Note, dated July 29, 2014, made and executed by Debtor Garden of Eden Enterprises, Inc. for the benefit of Hamdi Ulukaya, and (ii) stay Hamdi

{S2612481; 1}    25

**Formatted:** Left

Ulukaya from exercising and enforcing its rights and remedies under the Guaranty, dated July 29, 2014, by and between Mustafa Coskun and Celal Coskun, as guarantors, and Hamdi Ulukaya, as lender, the Promissory Note, dated July 29, 2014, by and between Debtor Garden of Eden Enterprises, Inc., as borrower, and Hamdi Ulukaya, as lender, and other related loan documents and under applicable law, against Mustafa Coskun and Celal Coskun.

18.5    **Release of Celal Coskun.**  In consideration of Celal Coskun's capital contribution of 25,000, upon the Effective Date and the payment of $25,000 capital contribution by Celal Coskun, Celal Coskun (the "Released Party") is hereby and shall be forever discharged and released from and against any Claims held or asserted by the Debtors or the Committee or any holder of any Claim (collectively, the "Releasors"), arising out of, or relating to, or taking place on or prior to the Effective Date and in any way relating to the Debtors, the Debtors' estates, the Chapter 11 Cases, or the Plan (collectively, the "Released Claims"), which Released Claims shall include, without limitation, any and all claims, demands, obligations, guarantees, damages, disabilities, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, and executions, the Debtors' estates' Claims and Claims under Chapter 5 of the Bankruptcy Code, whether known or unknown, fixed or contingent, liquidated, unliquidated, which the Releasors, or any of them, or any of their representatives, predecessors, successors, agents, or assigns ever had, now has, or hereafter can, shall or may have, against the Released Party pursuant to contract, statute or common law remedy; provided, however, that the foregoing shall not apply to Celal Coskun's fraud, gross negligence, breach of fiduciary duty, malpractice or willful misconduct.  Notwithstanding the foregoing, nothing contained in this Section shall affect Celal Coskun's guarantee of payment in the sum of $25,000.00. Nothing herein

**Formatted:** Left

shall act as a release of any guarantee claim which may be asserted by Noah Bank, Amex, or AmexHamdi Ulukaya.    Nothing in the confirmation order or the Plan of Reorganization shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, (including but not limited to the New York State Department of Taxation and Finance)  nor shall anything in the Confirmation Order or the Plan of Reorganization enjoin the United States or any state or local authority (including but not limited to the New York State Department of Taxation and Finance)  from bringing any claim, suit, action or other proceedings for any liability whatever, including without limitation any claim, suit, or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the confirmation Order or the Plan of Reorganization exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority (including but not limited to the New York State Department of Taxation and Finance)  whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local laws or authority.

**ARTICLE XIX**

**INJUNCTION**

19.1    Except as otherwise expressly provided in the Plan and the 14 Street Landlord Settlement, all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor shall, as of the Confirmation Date, be enjoined from instituting or continuing any judicial or administrative proceeding or employing any process to interfere with or alter:    (1) the

{S2612481; 1}                                                27

consummation or implementation of the Plan; (2) payments or transfers to be made under the Plan; and (3) the collection of any and all assets of any kind or nature pursuant to the Plan.

## ARTICLE XX

## EFFECT OF CONFIRMATION

20.1    On the Confirmation Date, title to and possession of any and all property of the estate, real or personal, tangible or intangible, shall be re-vested in the Reorganized Debtors, subject to and except as otherwise provided in the Plan.  Except as provided for in this Plan and the 14 Street Landlord Settlement, the Confirmation Order shall be a judicial determination of discharge of the Debtors from all debts that arose before the Confirmation Date and any liability on a Claim that is determined under § 502 of the Bankruptcy Code as if such Claim had arisen before the Confirmation Date, whether or not a proof of claim based on any such debt or liability was filed under §501 of the Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under § 502 of the Bankruptcy Code.

20.2    Except as otherwise provided in the Plan and the 14 Street Landlord Settlement, the issuance of the Confirmation Order and the occurrence of the Effective Date shall operate as a discharge, pursuant to § 1141(d)(1) of the Bankruptcy Code, effective as of the Effective Date, of any and all debts (as such term is defined in § 101 of the Bankruptcy Code) against the Debtors that arose at any time before the Confirmation Date, including, but not limited to, all principal and interest, whether accrued before, on or after the Filing Date.  On the Confirmation Date, as to every discharged debt and Claim, the Claimant that held such debt or Claim shall be permanently precluded from asserting against the Debtors, or against any of the Debtors' assets or properties,

**Formatted:** Left

any other or further claim based on any document, instrument or act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. Without limiting the generality of the foregoing, on the Effective Date, the Debtor shall be discharged from any debt that arose before the Confirmation Date, in any debt of the kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, to the full extent permitted by § 1141(d)(1)(A) of the Bankruptcy Code. Except as otherwise provided herein, nothing in this Plan shall be deemed to waive, limit or restrict in any way the discharge granted upon confirmation of the Plan and § 1141 of the Bankruptcy Code.

20.3    Except as otherwise provided in the Plan and the 14 Street Landlord Settlement, but subject to the occurrence of the Confirmation Date, all persons who have held, hold or may hold Claims, Equity Interests or Administrative Claims are enjoined from taking any of the following actions against or affecting the Debtors or the assets of the Debtors with respect to such Claims, Equity Interests or Administrative Claims, other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:

(a)    commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors or the assets of the Debtors;

(b)    enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors or assets of the Debtors;

(c)    creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the assets of the Debtors;

(d)    asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due to the Debtors or the assets of the Debtors; and

**Formatted:** Left

{S2612481; 1}                                                                29

(e)    proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.

### ARTICLE XXI
### DEFAULT

21.1    Each of the following shall be an Event of Default under the Plan: (1) failure to make the required payments as set forth in the Plan; or (2) a material breach of any other provision as provided for in the Plan. The Reorganized Debtors' shall be entitled to 30 ~~days~~days' notice of default prior to enforcement of any default under the Plan.

### ARTICLE XXII
### PREPAYMENT

22.1    The payments to be made under the Plan may be prepaid at any time without penalty or incurrence of additional interest.

### ARTICLE XXIII

### RETENTION OF JURISDICTION

23.1    The Bankruptcy Court shall retain and have exclusive jurisdiction over these Chapter 11 Cases and the Plan whether or not an order closing the Chapter 11 Cases has been entered including, but not limited to jurisdiction over the following matters:

    (a)    to adjudicate all controversies concerning the classification or allowance of any Claims, whether existing at the Confirmation Date or occurring thereafter;

    (b)    to determine any and all objections to the allowance of Claims, whether existing as of the Confirmation Date or filed and/or occuring thereafter;

{S2612481; 1}                                                    30

**Formatted:** Left

(c)     to determine any and all applications for allowance of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Plan, whether existing at the Confirmation Date or occurring thereafter;

(d)     to determine any applications pending on the Confirmation Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom filed before or after the Confirmation Date;

(e)     to determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Confirmation Date or filed thereafter;

(f)      to consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

(g)     to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any provision thereof from and after the Confirmation Date;

(h)     to consider and act on the compromise and settlement of any Claim against or cause of action by and against the Debtors and the Debtors' estates;

**Formatted:** Left

(i)     to issue such orders in aid of execution of the Plan or any provision thereof
        to the extent authorized by §1142 of the Bankruptcy Code;

(j)     to enforce all orders, judgments, injunctions and rulings entered in
        connection with these Chapter 11 cases;

(k)     to enter a final decree and Order closing the Debtor's Chapter 11 Cases; and

(l)     to determine such other matters as may be set forth in the Confirmation
        Order or which may arise in connection with the Plan or the Confirmation
        Order.

## ARTICLE XXIV

### DOCUMENTS

24.1    The Debtors are hereby authorized to execute any and all documents reasonably
necessary to effectuate the terms of the Plan.

## ARTICLE XXV

### NOTICES

25.1        Whenever it is provided that any notice, demand, request, acceptance,
rejection, or any other communication shall be given to or served upon any of the parties by any
other, each such communication shall be sent:

If to the Debtors:

Garden of Eden
2780 Broadway
New York, New York 10025

with a copy to:

{S2612481; 1}                                        32

Formatted: Left

PLATZER, SWERGOLD, LEVINE,
GOLDBERG, KATZ & JASLOW, LLP
475 Park Avenue South - 18th Floor
New York, New York  10016
Attn:  Clifford A. Katz, Esq.

     25.2    Notice of the entry of the Confirmation Order shall be sufficient if a copy of the notice, without attaching such order, is mailed to all known holders of Claims or Equity Interests, whether or not allowed, to their last known address. From and after the Effective Date, notices of appearance and demands for service of process filed with the Court prior to such date shall no longer be effective except as otherwise provided for herein.  No further notices, other than notice of entry of the Confirmation Order, shall be required to be sent to any entity unless such entity files a new notice of appearance and demand for service of process dated subsequent to the Effective Date which subsequent notice and demand shall be served upon the Debtor's attorneys.

**ARTICLE XXVI**

**<u>MISCELLANEOUS PROVISION</u>**

Formatted: Left

26.1        26.    No payments of fractions of dollars will be made.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment may reflect a rounding to the nearest whole dollar (up or down).  In addition, no dividend in an amount less than twenty-five ($25.00) dollars shall be disbursed to any Creditor.  If a Creditor does not receive a cash payment because the payment would be less than $25.00, such Creditor will be entitled to aggregate such amount payable with other amounts payable on subsequent dates in order to receive a cash payment.

26.2    The Plan may be modified or amended by the Plan Proponents before or after the Confirmation Date as provided in §1127 of the Bankruptcy Code.

**Formatted:** Normal,  No bullets or numbering, Don't keep with next, Don't keep lines together

**Formatted:** Left

26.326.1    The Plan shall be deemed substantially consummated upon the initial payment to holders of Class 5 Allowed Unsecured Claims. Failure of the Debtors to make any payments under this Plan which remain uncured shall constitute sufficient cause under Bankruptcy Code section 350 to immediately seek to reopen the bankruptcy case.

26.426.2    Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

26.526.3    Words and terms defined in §101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.  The rules of construction in §102 of the Bankruptcy Code apply to the construction of the Plan.

26.626.4    Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

26.726.5    Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York.

26.826.6    The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

26.926.7    The Debtors reserve the right to modify the treatment of any Allowed Claims at any time after the Confirmation Date upon the consent of the Creditor whose Allowed Claim treatment is being modified, as long as no other Creditors are adversely affected.

**Formatted:** Left

26.1026.8    The Debtors reserve the right to revoke or withdraw the Plan prior to Confirmation Date.  If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any claims against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtor.  On or before substantial consummation of the Plan, the Debtors shall file with Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

26.1126.9    Within fourteen (14) days following the full administration of the estateUpon substantial consummation of the Plan, which the Debtors assert will occur upon the initial distribution to Class 5 Unsecured Creditors, the Debtors shall file, on notice to the United States Trustee, an application and proposed Order for a final decree to close the Chapter 11 cases, pursuant to Bankruptcy Rule 3022.

**[INTENTIONALLY LEFT BLANK]**

Formatted: Left

**SIGNATURE PAGE**

Dated: New York, New York
~~April 18, 2019~~
July 1,  2020

GARDEN OF EDEN ENTERPRISES, INC. D/B/A
GARDEN OF EDEN

By: */s/ Mustafa Coskun*

BROADWAY SPECIALTY FOOD, INC.

By:  */s/ Mustafa Coskun*

GARDEN OF EDEN GOURMET INC.

By:  */s/ Mustafa Coskun*

Dated: New York, New York
~~April  19, 2019~~
July 1, 2020

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

By: */s/- Tom Marshall*

{S2612481; 1}                                                37

**CONTINUED SIGNATURE PAGE**

Dated: New York, New York
~~April 19, 2019~~July 1, 2020

PLATZER, SWERGOLD, LEVINE,
GOLDBERG KATZ & JASLOW, LLP
Attorneys for the Debtor

By:  */s/Clifford Katz*
  Clifford A. Katz
  Member of the Firm
  475 Park Avenue South - 18th Floor
  New York, New York  10016
  (212) 593-3000

Dated: New York, New York
~~April 19, 2019~~
July 1,  2020

SULLIVAN & WORCESTER LLP
Attorneys for the Committee

By: */s/ ~~Jeff~~Jeffrey R. Gleit*

**Formatted:** Font: Italic, Underline

  Jeffrey R. Gleit
  1633 Broadway
  New York, New York  10019
  (212) 660-3000

{S2612481; 1}                                    38

**Formatted:** Left